ELIZA DACK, APPELLANT, v. JAMES DACK, RESPONDENT.

*Will — what evidence as to execution of, sufficient to authorize its admission to*
*probate.*

APPEAL from a decision of the surrogate of Monroe county,
refusing to admit to probate a codicil to the will of James Dack,
deceased.

The testator's will, dated December 15, 1871 was admitted to
probate.    The codicil is dated March 8, 1876.

The surrogate decided that the testator was competent to make
a will, and that the will was executed in due form. and that
neither the will nor codocil was procured by undue influence;
that the evidence failed to *show a proper execution of the codicil*,
and he, therefore, admitted the will to probate and rejected the
codicil.    The appeal is from that part of the decree which rejects
the codicil.

The attestation clause to the codicil was in the usual form, and
was signed by three witnesses.

The codicil was drawn by one of the witnesses at the request
of the testator, after proper instructions, as to what disposition he
desired to make of his property, had been given.    The codicil
was drawn at the residence of the draughtsman and there
executed.

The testator visited the draughtsman in February, 1876, and
took the will to him and left it.

Again he visited him on the 8th of March, 1876, and made a request that the codicil should be prepared in obedience to his instructions, and it was then prepared in the testator's presence, and the draughtsman says the next thing that occurred was " the signing it."

The draughtsman says he called his son and William Rossiter, and they both came into the room where the draughtsman and the testator were. There was a cross made by the testator to the codicil to the will before the two last named witnesses entered the room. After they came into the room, the draughtsman asked the testator if that was his signature in the presence of those who signed, and he said it was.

The case then states that the draughtsman was asked this question, viz. : " Do you recollect whether you asked him if that was his last will or codicil ? A. I don't remember just how I worded it."

Q. Can you give the substance of the language you used ? A. *I don't recollect I asked* him any more than " if that was his signature in their presence at the time."

Q. After that occurred did you sign ? A. " My signature was first."

Q. Did you see the other parties ? A. " I did."

Q. That is your writing where the mark is made ? " James Dack, his mark," is in your handwriting ? A. Yes, sir.

Lewis B. Carpenter, son of the draughtsman, and one of the witnesses to the codicil was called as a witness and testified, among other things, viz. : That he witnessed the codicil at his father's residence ; that his father called him to sign his name as a witness, and that he was in another room when called to the presence of the testator and witness' father.

And also, viz.:

Q. Do you recollect just what was said ? A. He asked Mr. Dack if that was his signature, and he said it was.

Q. I mean when your father spoke to you ? A. I don't remember.

Q. Give the substance ? A. " He wanted me to come in and sign the paper ; I cannot tell what he said."

Q. He said it loud enough so I heard it in the next room ? A. Yes, sir.

Q. Did you see your father sign his name there ? A. I don't recollect.

Q. Did you see Mr. Rossiter ? A. *He was there* when I signed my name ; I saw him sit down to the table and take the pen.

Q. And your father asked Dack if. that was his signature ? A. " Yes, sir."

Q. Do you recollect of hearing any portion of the will read over ? A. I may have some ; I don't recollect.

The witness Rossiter was called and testified that he signed his name to the attestation clause of the codocil at the draughtsman's residence, and that he was in the woodshed when requested to go into the room where the testator and draughtsman were.

He further testified, viz. :

Q. How come you to go into the room where they were ? A. Mr. Carpenter asked me to come in there, that Mr. Dack requested me.

Q. You was invited to go in, and after you went in you say Mr. Carpenter was present. A. Yes, sir.

Q. And the two Mr. Carpenters and yourself ? A. Yes, sir.

Q. Was this paper (codicil shown) there also ? A. Yes.

Q. Whether you recollect of seeing Mr. Dack make his mark on the paper ? A. I saw Mr. Carpenter hand Dack a pen, and heard him say if he acknowledged this will ; he said, yes ; whether at that he made his mark or not I cannot tell ; Dack took the pen and said, yes ; and I went forward towards Carpenter.

Q. " After that occurred, after Dack had gone forward towards Carpenter, was it before or after you put your name here ? A. Before."

Q. How came you to put your name down there ? A. " Mr. Carpenter said Mr. Dack requested me to sign the will."

Q. That was in the presence of Mr. Dack ? A. " Yes, sir."

Q. Did you see or did you not see the gentlemen put their names there ? A. I saw Mr. Carpenter put his name down; the other name was Mr. John H. Carpenter; I did not see him put it there, it was there *when I put my name* down ; *the other* name ; I saw him put his down ; was not in the room over five

or six minutes. * * * * "Mr. Carpenter asked Mr. Dack if he wanted me to sign the will, Mr. Dack said, yes "

The court, at General Term, said : "We think the evidence establishes that the testator understood the character of the instrument when he subscribed his name thereto. It is likewise clear that each of the witnesses had information of the testamentary character of the instrument, which they severally attested at the time they respectively placed their signatures thereto in the presence of the testator.

Taking the attestation clause with the affirmative oral evidence, we must also conclude that the testator declared the instrument to be his codicil to the witnesses, and requested them to become subscribing witnesses thereto, and that in compliance with his request they did in his presence subscribe their names to the codicil. (*Willis* v. *Mott*, 36 N. Y., 486.)

The positive evidence given bearing upon the essentials to the due execution of the codicil is not overcome, shaken or disturbed by the mere want of memory of some of the incidents to the due execution by either of the two Carpenters. (*Field* v. *Field*, 19 Alb. Law Jour., 457; Court of Appeals, *Jauncey* v. *Thorne*, 2 Barb. Ch., 40; *Gilbert* v. *Knox et al.*, 52 N. Y., 125; *Newhouse* v. *Godwin*, 17 Barb., 236; *Thompson* v. *Stevens*, 62 N. Y., 634.)

It is a sufficient request, if the draughtsman in the presence of the testator requested the witnesses to witness the codicil and they thereupon signed it. (*Peck* v. *Cary*, 27 N. Y., 9; approved *Gilbert* v. *Knox*, 52 id., 129.)

*J. & Q. Van Voorhis*, for the appellant. *Harvey & White*, for the respondent.

Opinion by HARDIN, J., TALCOTT, P. J., and SMITH, J., concurred.

Decree of surrogate of Monroe county refusing probate of the codicil reversed, with costs of the appeal payable out of the estate, and proceedings remitted to the surrogate with directions to admit the codicil to probate.